IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-00026-BR

**United States of America**,

v.

**Jamey Ameche Owens**,

Defendant.

**Order**

Defendant Jamey Ameche Owens asks the court to reopen his detention hearing and release him from custody. The court has considered the various grounds that Owens has raised in his motion and finds that none of them justify reopening his detention hearing or ordering his release. Thus, the court denies his motion.

A federal grand jury indicted Owens on three drug- and firearm-related charges in January 2020 for conduct that allegedly occurred in January 2019. D.E. 1. Law enforcement arrested Owens on the federal charges in late March 2020 and he had his initial appearance in this court soon after. D.E. 8, 10. During his initial appearance, the United States requested that the court detain Owens pending further proceedings in his case. D.E. 8.

After considering the information proffered by each side and the argument of the attorneys, the court granted the motion for detention. Hr'g Tr. at 16:7, D.E. 25. This decision reflected a determination that the United States had shown by clear and convincing evidence that no condition or combination of conditions could reasonably assure the safety of any other person and the community pending the outcome of the case.[1] Tr. at 16:3–7.

---

[1] Given the basis for the court's ruling, it is curious that Owens spends a great deal of time in his motion explaining why he is not a flight risk. *See, e.g.*, Mot. at 5, D.E. 19 ("Mr. Owens is not a serious risk of flight under any properly applied standard in the Bail Reform Act . . . . In this case, the government does not have sufficient evidence, by a preponderance, that Mr. Owens poses a serious risk of flight."). In fact, at no point in his motion does Owens directly

About a month after his detention hearing, Owens filed a document entitled "Emergency Appeal of Magistrate Judge Order Granting the Government's Motion for Detention Pursuant to 18 U.S.C. § 3142(f)(1) Motion for Release and Incorporated Memorandum of Law." D.E. 19. In that document, Owens asked the court to release him from pretrial detention. The motion contained several arguments, but in sum, it argued that the court should release him from custody because of his declining health, the difficult conditions of confinement at the Wake County Detention Center, and the availability of a new third-party custodian.

Senior United States District Judge W. Earl Britt reviewed the filing and determined that because Owens "appears to rely on information not known to him at the time of his detention hearing," it was appropriate to treat the motion as one to reopen the detention hearing under 18 U.S.C. 3142(f). D.E. 21. And so, he referred the motion to the undersigned magistrate judge for resolution. *Id*.

The court will address each of Owens's arguments in turn.

**I.      Section 3142(c) – Release on Conditions**

Owens begins by directing the court to 18 U.S.C. § 3142(c). This statutory provision provides the general conditions a court may impose if it determines it is appropriate to release a defendant prior to trial. Since Owens has already had his detention hearing, this subsection does not provide an avenue to reopen his detention hearing or release him from custody.

---

address whether there are conditions the court could impose that would reasonably assure that he would not pose a danger to the community. Nor does he argue that the United States failed to meet its burden on this issue.

## II. Section 3142(f) – Reopening a Detention Hearing

Next, Owens points to 18 U.S.C. § 3142(f) as a basis for his release from custody. That subsection allows a court to reopen a detention hearing "at any time before trial[.]" 18 U.S.C. § 3142(f). To reopen a hearing, a judicial officer must make two findings. First, that "information exists that was not known to the movant at the time of the hearing[.]" *Id.* And second that the new information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *Id.*

Owens asks the court to "find that both the COVID-19 crisis and the lack of access to counsel constitute a material change in circumstances" justifying reopening his detention hearing. Mot. at 12. But the information Owens has presented to the court does not justify reopening his detention hearing. A review of the transcript from the hearing shows that he raised his health issues at his original detention hearing. Tr. at 5:10–16. Nor does the COVID-19 pandemic qualify, in this case, as new information. Defense counsel argued for Owens's release because of the risk posed by COVID-19 at his detention hearing. *Id.* at 5:17–21.

Owens does, however, raise several issues with the court that were not known to him at the time of his detention hearing. These issues relate to the medical care he is receiving while detained, other conditions of confinement at the Wake County Detention Center, and his ability to confer with his attorney while detained. But none of these issues have any bearing on whether conditions exist that will reasonably ensure that he will not pose a danger to the community if released.

Thus, Owens has not made the necessary showing to reopen his detention hearing under § 3142(f).

**III.     Section 3142(i) – Temporary Release for a Compelling Reason**

The last statutory provision Owens refers to is 18 U.S.C. § 3142(i).[2] Under the language of that subsection, the court may temporarily release a detainee from custody if "the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

Whether COVID-19 qualifies as a compelling circumstance under § 3142(i) is highly fact specific.[3] The Fourth Circuit has recently provided the district courts with guidance on the factors

---

[2] Owens does not explain in his brief how or why § 3142(i) justifies his release. As Owens cites a number of cases that addressed whether COVID-19 justifies release under that subsection, the court will focus on that issue here. To the extent that Owens is relying on his health or other conditions of confinement to justify his release, they are insufficient. Owens is receiving medical care for his conditions and will still be able to see outside medical providers. And it appears that he should have ready access to his attorney. Any issues he has with his conditions of confinement can be address through the Detention Center's grievance process.

[3] Owens cites an extensive number of cases in his memorandum when courts have released a defendant from custody because of COVID-19-related concerns. *See* Motion at 9 n.18. But there are an equally substantial number of cases deciding the issue the other way. *See, e.g.*, *United States* v. *Lee*, Civil Action No. ELH-19-159, 2020 WL 1974881, at *1-*2, *6-*8 (D. Md. Apr. 24, 2020) (despite defendant's obesity, high blood pressure, and depression, the court found that given his alleged conduct (sex trafficking and production of child pornography), the weight of the evidence, and a prior violation of pretrial release defendant had not shown a compelling reason for release under § 3142(i)); *United States* v. *Santana*, Crim. No. 1:19-CR-251, 2020 WL 1692010, at *2, *5 (W.D. Pa. Apr. 7, 2020) (defendant's danger to community and flight risk given "his criminal history, his pattern of substance abuse and drug trafficking, his denial of bail in his local Franklin County case for possession with intent to deliver a controlled substance, his gun ownership in connection with drug trafficking, and the fact that he ran when law enforcement attempted to apprehend him for the current charges" outweighed his "severe persistent asthma and sleep apnea"); *United States* v. *Tucker*, Crim. No. GJH-19-0555, 2020 U.S. Dist. LEXIS 59516, at *2, *5, *6-*7 (D. Md. Apr. 3, 2020) (where defendant suffered from severe asthma, high blood pressure, and high cholesterol but did not provide medical records to the court and had not come into contact with any detainees who had tested positive for COVID-19, the court found this insufficient to justify temporary release given defendant's affiliation with drugs and guns); *United States* v. *Wright*, No. 3:18-CR-635-N, 2020 WL 1694298, at *5 (N.D. Tex. Apr. 7, 2020) (a defendant's underlying health condition making him more susceptible to COVID-19—here, Crohn's disease—is "not sufficient, without more" to meet § 3142(i)); *United States* v. *Landji*, 18 Cr. 601, 2020 WL 1674070, at *4-*5 (S.D.N.Y. Apr. 5, 2020) (that defendant was "58 years old and in declining health" in that he was suffering from weight loss and sleep deprivation did not present compelling reason for release under § 3142(i) given the severity of the drug conspiracy he was involved in and the weight of the evidence); *United States* v. *Christian*, 1:20-CR-00019-DKC-1, 2020 WL 1676102, at *2-*3 (D. Md. Apr. 6, 2020) (where defendant suffered from asthma, the court found "[t]he presence of the virus both inside and outside [the detention facility] does not change Defendant's criminal history of handgun and drug distribution convictions, nor his inability to comply with release conditions imposed by prior judges . . . . It does not change the nature of the current gun charge, supported by strong evidence . . . . Nor has Defendant demonstrated that, at present, his particular risk in detention is markedly different from his risk in the community so as to outweigh all of the other 3142(g) factors, putting aside any health risk that Defendant himself might introduce to the community should be released if, as before, he were to be noncompliant with release conditions and the directives of public officials and health agencies."); *United States* v. *Lunnie*, Case No. 4:19-CR-00180, 2020 WL 1644495, at *3-*4 (E.D. Ark. Apr. 2, 2020) (where defendant was "48 years old and claim[ed] bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen" and there were no known cases of COVID-19 at his facility, the

to consider when reviewing this question. The court must assess "the severity of the risk that the COVID-19 virus poses to the defendant[.]" *United States* v. *Creek*, No. 20–4251 (4th Cir. Apr. 15, 2020), ECF No. 402. This requires consideration of the defendant's "existing medical conditions and the current COVID-19 situation at the facility where he is being held[.]" *Id.* The court must then determine "whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release[.]" *Id.* The defendant bears the burden of establishing that a compelling reason exists justifying his release.

Assessing the risk COVID-19 poses to Owens's health requires an assessment of his physical condition. He is not a picture of health. Owens lives with "Neuropathy, Hepatitis B (since 2017), kidney disease, and a liver functioning at less than fifty percent (since June 2019)." Mot. at 7. Owens submitted a declaration that, among other things, explains that COVID-19's "fatality rate is higher in men[.]" Beyrer Dec. ¶ 13, D.E. 19–1. The declaration also states that "[p]eople . . . who suffer from certain underlying medical conditions, including . . . chronic liver or kidney disease (including hepatitis . . . patients) . . . have an elevated risk" of death from the virus. *Id.* ¶ 17. The combination of Owen's gender and health issues do place him at higher risk for having serious complications from COVID-19 than the average inmate.

---

court determined many other detainees also have pre-existing conditions so defendant's were not compelling); *United States* v. *Thomas*, Crim. No. 19-176, 2020 WL 1599339, at *1 (W.D. Pa. Mar. 31, 2020) (defendant had "documented history of seasonal bronchitis and acute ulcerative colitis" but jail had taken appropriate steps to prevent COVID so "speculation concerning possible future conditions [did] not constitute a 'compelling reason' for temporary release"); *United States* v. *Walker*, Case No. 20-10028-20-EFM, 2020 WL 1545714, at *1-*3 (D. Kan. Mar. 30, 2020) (where defendant was charged in large-scale drug-trafficking conspiracy and was "54 years old and has been disabled for 5 to 6 years, . . . is a diabetic, and also has [respiratory] issues," the court found "there is no indication that he is currently ill from his chronic conditions, or that the jail is unable to care for him" so he did not meet the § 3142(i) standard); *United States* v. *Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (the court acknowledged that defendant "suffers from hypertension, sleep apnea and asthma" but found that there was no indication defendant's medical needs weren't being addressed in custody so defendant did not present compelling reason for release); *United States* v. *Green*, Crim. No. 19-85, 2020 WL 1493561, at *1-*2 (W.D. Pa. Mar. 27, 2020) (where defendant had "documented history of asthma" and COVID-19 had not yet been detected at defendant's facility, defendant did not present compelling reason for release). This is not a question that lends itself to a uniform outcome in all cases.

Given the risk Owens faces by being detained, the conditions at the Wake County Detention Center take on greater importance. The Detention Center has taken meaningful and effective steps to limit the introduction and spread of COVID-19. Each arrestee or detainee receives a COVID-19 screening before entering the facility. Ollion Dec. ¶ 4(b)(i) & (iii), D.E. 27–2. If an arrestee or detainee passes the COVID-19 screening, the Wake County Sheriff's Office then quarantines them in a single cell dormitory for fourteen days. *Id.* ¶ 4(b)(v). Any arrestees or detainees displaying potential symptoms of COVID-19 are masked and placed in a negative pressure room in the medical observation wing. *Id.* ¶ 4(d)(i). The facility also can test any individuals exhibiting symptoms for COVID-19. *Id.* ¶ 4(d)(ii). And the facility has employed a variety of enhanced cleaning procedures to minimize the chance of the virus surviving in the facility. *Id.* ¶ 4(c). These steps appear to have been effective as there have been no reported cases of COVID-19 in the Detention Center. *Id.* ¶ 6; Resp. to Mot. at 9–10, D.E. 27. Thus, there appears to be a minimal risk that Owens will be exposed to COVID-19 while detained at the Wake County Detention Center.

On the other side of the ledger is the strength of the case for detention. The Bail Reform Act sets out the factors the court is to consider in determining whether it is appropriate for the court to release or detain a defendant. The court is to consider "the nature and circumstances of the offense charged[.]" 18 U.S.C. § 3142(g)(1). This includes considering whether the offense is "crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device[.]" *Id.* Then, the court should assess "the weight of the evidence against the" defendant. *Id.* § 3142(g)(2). Next the court looks to the defendant's history and characteristics. *Id.* § 3142(3). In addressing this factor, Congress requires the court to look at a variety of items related to the defendant's community and

family ties, work history, criminal history, performance on supervision, and substance abuse history. *Id.* The final factor for the court to review is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4).

In addition, for some crimes, Congress believed it was appropriate to establish a rebuttable presumption in favor of detention. When the presumption applies, "a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). When the defendant satisfies this burden, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* But despite the presence of the presumption, "the government retains the ultimate burden of persuasion" that detention is appropriate. *Id.*

Ultimately, the appropriateness of detention turns on whether the government has established that there are no conditions that the court could impose that would reasonably assure the defendant's appearance at trial or reasonably guarantee the safety of any other person or the community. The United States must establish the former element by a preponderance of the evidence and the latter factor by clear and convincing evidence. *Id.*; 18 U.S.C. § 3142(f).

In assessing the strength of the case for detention, the court starts with whether the presumption in favor of detention applies in this case. Among the circumstances that cause the presumption to kick in is when the court finds that there is probable cause to believe that the defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). Also falling into the category of presumption-worthy offenses is "an offense under section 924(c) . . . of" Title 18 of the United States Code. *Id.* § 31424(e)(3)(B).

7

The grand jury indicted Owens on not one, but two charges that qualify for the presumption in favor of detention. The first charge against him is for possession with the intent to distribute quantities of heroin, marijuana, and cocaine. Indictment at 1, D.E. 1. This offense violates the Controlled Substances Act and is punishable by up to 20 years in prison. 21 U.S.C. § 841(b)(1)(C). And the second count against him is for a violation of 18 U.S.C. 924(c). Owens' indictment on these charges is enough to establish probable cause to believe he committed them. *Durham* v. *Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (citing *Gerstein* v. *Pugh*, 420 U.S. 103, 117 n.19 (1975)). Thus, he qualifies for the presumption in favor of detention under both § 3142(e)(3)(A) and § 3142(e)(3)(B).

The nature and circumstances of Owens's charges strongly favor detention. He is indicted on drug and firearm charges—two of the categories Congress instructed the court to scrutinize in determining whether detention is appropriate.

And that scrutiny shows that Owens was involved in serious criminal activity.

Owens's home was stocked with drugs. Officers found 20 grams of cocaine, over 80 individual bags of heroin, 2.9 grams of raw heroin, and 271 grams of marijuana. Tr. at 7:25–8:3; Resp. in Opposition at 2, D.E. 27. They found more heroin hidden in Owens's car. Tr. at 8:13–15.

Along with the drugs, Owens possessed items indicative of drug trafficking activity. These items include four digital scales, ink, an ink stamp, empty glassine bags, and two Pyrex dishes with a white powdery substance in them. *Id.* at 8:4–11. And Owens had $3,271 in cash in his house, despite having no meaningful employment history. *Id.* at 8:8–11.

Owens also possessed a small arsenal at the time of his arrest. During their search officers found five firearms, six types of ammunition, and a bulletproof vest. *Id.* at 7:17–25; 8:12–15.

The penalties Owens faces if he is convicted also highlight the seriousness of his alleged offenses. He faces up to 20 years in prison on the possession with intent to distribute charge, a mandatory minimum sentence of 5 years and up to life in prison for possessing a firearm in furtherance of a drug trafficking crime, and up to 10 years in prison for being a felon in possession of a firearm.

Moving on to the second factor, the evidence against Owens appears very strong. Officers found all the contraband at the house Owens lived in and he was sitting on the couch when they arrived. On top of that, Owens provided a written statement taking responsibility for the drugs and firearms that officers seized. The United States, at least at this point in the case, can make a compelling argument that Owens engaged in the charged conduct.[4]

Owens's history and characteristics show that he poses a risk of danger to the community.

This is not the first time that Owens has found himself in court for drug-related conduct. Over 20 years ago, in 1999, Owens pleaded guilty to a felony charge of Selling and Delivering Cocaine in North Carolina state court. Pretrial Services Report at 4, D.E. 14. Then, four years later in 2003, Owen pleaded guilty in state court to one felony count of Maintaining a Vehicle, Dwelling, or Place for a Controlled Substance and one felony count of Possession with Intent to Sell or Deliver a Schedule II Controlled Substance. *Id.* His criminal record is also littered with convictions for drug-related misdemeanor offenses. *Id.* at 4–7.

---

[4] Owens encourages the court to disregard or accord little weight to the United States' evidence because he enjoys the presumption of innocence. The presumption is "the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin* v. *United States*, 156 U.S. 432, 453 (1895). But in assessing the impact of the presumption at this stage of the proceeding, it is important to remember that "[t]he presumption of innocence is a doctrine that allocates the burden of proof in criminal trials[.]" *Bell* v. *Wolfish*, 441 U.S. 520, 533 (1979). It provides "an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial." *Id*. And while this court keeps the presumption in mind when assessing detention motions, the Supreme Court has even held that "it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." *Id*.

9

Owens also has a demonstrated history of committing crimes and otherwise violating conditions while under supervision.

- In December 1994, Owens received 18 months of unsupervised probation after pleading guilty to two drug offenses. *Id.* at 4. Yet in August 1995, a little over 9 months later, he again committed a misdemeanor drug offense. *Id.*

- After pleading guilty to a felony offense of selling and delivering cocaine, the court placed Owens on probation for two years. *Id.* But he violated the conditions of his probation by, among other things, "engaging in new criminal conduct." *Id.*

- Owens received a five-year probationary sentence in connection with his 2003 conviction on felony drug charges. But in February 2005, before he had completed even half of his probationary period, the state court revoked his probation because he engaged in criminal conduct. *Id.* at 4−5.

- In December 2003, Owens found himself arrested on a misdemeanor larceny charge. *Id.* at 5. Yet in the following weeks, he committed the misdemeanor offenses of speeding, resisting a public officer, and driving while license revoked. *Id.*

- In October 2007, Owens faced arrest for driving with a revoked license. *Id.* at 6. Between October 2007 and his guilty plea in September 2010, he committed the offenses of possession of stolen goods or property and cruelty to animals. *Id.*

- After his September 2010 guilty plea to a charge of cruelty to animals, Owens received an 18-month term of probation. *Id.* But just over a year later, the court terminated his probation after he failed to pay court costs and, more importantly, engaged in new criminal conduct. *Id.*

10

- And while Owens was serving an 18-month probationary period in 2012 and 2013, he committed the offenses of resisting a public officer and larceny. *Id.* at 6–7.

Owens's history reflects that he has repeatedly chosen to engage in criminal conduct and that being under supervision does not deter him from doing so.

Finally, the court must consider the nature and seriousness of the risk posed to the community by Owens's release. Owens is facing two offenses that qualify for the presumption, suggesting that he poses a substantial danger to the community. That is because the presumption "represents Congressional findings that certain offenders, including narcotics violators, as a group are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States* v. *Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

While the presumption may raise the specter of ongoing dangerousness, the specifics of this case reinforces it. Owens was found with a lot of drugs and several guns. It is widely recognized that "drugs and guns form a lethal combination that can lead to violence." *United States* v. *Harris*, 128 F.3d 850, 852 (4th Cir. 1997). And there is an "increased danger of violence when drug traffickers possess weapons." *United States* v. *Manigan*, 592 F.3d 631, 629−30 (4th Cir. 2010). The evidence found near Owens suggest that he was a serious drug trafficker who was ready to employ violence in connection with his trafficking activities. This poses a serious danger to the community.

As noted above, Owens has repeatedly engaged in criminal conduct throughout his adult life, and his most serious convictions relate to drugs. And he has shown by his own actions that he is either unwilling or unable to abide by the law while on supervision.[5] Thus, these factors support

---

[5] The court also notes that after his arrest on state charges for the conduct alleged in the indictment, Owens found himself arrested twice more while out on bond. Pretrial Services Report at 7−8. While he has not been convicted on

a conclusion that there is a substantial risk that Owens would engage in criminal conduct while on release.

Weighing in Owens's favor is his presentation of a potential third-party custodian who could supervise him while on release. Unlike the third-party custodian presented at his original hearing, this custodian could be with Owens almost all the time. This sort of arrangement is enough to satisfy Owens's burden of production under the presumption in favor of detention. But it cannot overcome all the other items, discussed above, that point to Owens posing a continued threat to the community. Owens has described the proposed third-party custodian as a father figure to him. But this person's presence in his life was apparently not sufficient to keep him from continuing to surround himself with drugs and firearms. And given that it appears that Owens was selling drugs out of and hoarding guns in his house in Henderson, North Carolina (some of which were hidden), placing him in another house in the same community does little to assure the safety of that community.

There is also the issue of Owens's health. As discussed above, he has several ailments. But he had at least most of these health conditions when he allegedly committed the offenses in the indictment. Thus, his health does not appear to limit his ability or willingness to engage in criminal conduct.

So even after considering the availability of a third-party custodian and Owens's health, the court believes that there is a serious risk that he will engage in criminal activity if released.

In the end, as required by the Fourth Circuit, the court must weigh the risk posed to Owens by COVID-19 against the other Bail Reform Act factors. Although Owens has an elevated risk of

---

these charges, there was at least probable cause to believe that he engaged in criminal conduct while on bond. Similar conduct while on release from these charges would provide a potential basis to revoke his pretrial release. *See* 18 U.S.C. § 3142(b)(1)(A).

Case 5:20-cr-00026-BR   Document 30   Filed 05/18/20   Page 12 of 13

complications from the COVID-19 virus, his chances of encountering the virus at the Wake County Detention Center are, at the moment, low. And the Bail Reform Act factors weigh strongly in favor of his detention. Thus, the court holds that the circumstances of this case do not establish a compelling reason justifying his temporary release under 18 U.S.C. § 3142(i).

Thus, the court denies Owens's motion.

Dated: May 18, 2020

_____
Robert T. Numbers, II
United States Magistrate Judge